U.S. v. Murillo-Gonzalez, 22-2123. Good morning, your honors, and may it please the court. My name is Amanda Lavin. I'm an assistant federal public defender in Albuquerque, New Mexico, and I represent the appellant in this case, Mr. Epifanio Murillo-Gonzalez. Deportation officer Casanova's seizure of my client, Mr. Murillo-Gonzalez, in his vehicle on February 16, 2019, was an overstep of official authority and violated the Fourth Amendment. Deportation officer Casanova is not a police officer. He's not authorized to enforce traffic laws, and this is not a traffic stop. He was a deportation officer conducting an enforcement action against a passenger in my client's vehicle, and that passenger, Officer Casanova believed, might be eligible for removal from the U.S., and that's why he had an administrative warrant to detain this individual. This administrative warrant for the passenger's arrest did not authorize deportation officer Casanova to stop the vehicle, nor did it give him the authority to detain Mr. Murillo-Gonzalez and question him. And I think that the fundamental... It did authorize, though, taking Mr. Torres-Mignon into custody, didn't it? That's correct, your honor. Yeah, and so all these other things that you say didn't authorize may have been necessary to achieve what was authorized. And I do not believe that is the case, your honor, because we have a situation where the target of the arrest warrant was at his home that the deportation officers were surveilling. Well, I shouldn't have said necessary, but at least it would be, I think, a permissible way to take somebody under custody. I mean, isn't it the officer's discretion whether to have a confrontation at a residence or wait until it was a different, perhaps safer environment to stop everybody, get them removed from their home? Certainly, we agree that the officer does have some deference when deciding how to go about affecting this warrant and detaining the individual. But the authority governing those limitations is clear and they're not supposed to affect these warrants in a way that trespasses on spaces where there's a reasonable expectation of privacy, such as a home, such as a vehicle. So you don't... I'm sorry, go ahead. Let me just ask this. Yeah, go ahead. So it would... The warrant they had certainly did not authorize entry into the home to arrest him. Isn't that correct? Correct. So doesn't that suggest that the last place they should try to affect the warrant would be at the house? They ring the bell. They say, we need you. He runs, he stays in the house. And officers just have to wait till he gets out anyway. So given that law, wouldn't it be more reasonable for them to wait until he leaves for some reason? I agree with the court that it would be more reasonable to wait for him to leave. And they did see him leave. The testimony at the hearing was that the target of the arrest warrant walked about 25 to 30 feet to the vehicle. They could have arrested him at that point. They could have followed the vehicle to wherever they were headed. They were going to work, is what the officer believed is going on that morning. So there are ways that this warrant could have been affected without having to trespass on my clients. You know, other than bright line rules involving houses, I'm unaware of cases where the court micromanages the discretion of the circumstances under which warrants should be executed. So I think for this case specifically, when we're talking about an administrative arrest warrant pursuant to immigration authority to detain someone who immigration officers have reason to believe is eligible for removal, we can look to the federal law enforcement training that the deportation officer Casanova testified that he underwent, which tells officers that they could not execute warrants in a private setting in a private space where there's a reasonable expectation of privacy. And so that would include a private vehicle. So, I mean floating around in all of this is the idea that an administrative warrant is something less than a judicial warrant, right? Correct. Okay. And so you don't disagree that he could have walked up to both of them on the sidewalk and arrested the person for whom he had a warrant and start talking to your client, right? I don't disagree with that hypothetical situation. I think that there would still be limitations in place. Okay, let's explore a few more things. What if this had, let's flip the driver and passenger. What if the person who the officer had a warrant for was driving and your client was the passenger of the vehicle? You think it would be okay for them to stop the vehicle and arrest the person for whom they had a warrant and then while they're doing it, start chatting up your client? I do not, Your Honor. And I think the same analysis applies. A vehicle is still a place within which someone has a reasonable expectation of privacy and the guidance and authority given to immigration officers, you know, who are executing these types of warrants says that they have to do it in a public place. Okay, would you be, so you, I mean, would you be against the stop driving down a public street? I do think that that would be an overstep of immigration. Okay, even if your client was not the driver? I think there would be a better argument that it was not a violation. Of course there would be. That's why I'm giving you the hypothetical. But I still, I still don't think that that is permissible. And I also don't think it'd be permissible. What if it was, what if he followed him all the way to work and they went inside a warehouse and the deportation officer asked somebody outside, hey, you mind if I slip in there? And they said no, and he made the encounter inside the warehouse. That had no connection, other than being their place of work. It was not owned by either of them. I don't see that as presenting the same issues that stopping a private vehicle does. I think that the officer certainly could have followed the men to work and executed the warrant at their place of work. I don't know, you know, the exact, I don't know where they were headed. I don't know if the work environment was a public space or not, but that certainly seems to be what their authority telling them how they can affect these warrants seems to say is that they can encounter them in a public space and affect the warrant that way. But we have a number of cases involving Border Patrol agents, not at a checkpoint, but they're patrolling near the border and they have reasonable suspicion to believe that a vehicle contains aliens and they stop them. And that's from Almeida Sanchez on, that's been the law. They had reasonable suspicion to believe that there was an alien in this vehicle. Why isn't that law regarding what happens with Border Patrol agents all the time? Why isn't that governing here? The cases that I'm familiar with that are cited in the briefs, Your Honor, would indicate that it seems like in almost every one of these situations where there's a reasonable suspicion that there are people who are violating the law by having unlawful presence. There's also some attendant traffic violation. And so that's the reason for the stop. There are plenty that don't. What's the Supreme Court decision that talks about divide and conquer? You're supposed to know that. Okay, but there's... I'm in disappointment up here. I don't have all the Supreme Court cases memorized. And additionally, I'm certain that that's been litigated a multitude of times, including cases resolved by the U.S. Supreme Court, where if there's reasonable suspicion to believe that there's an alien in the vehicle, Border Patrol agents have the right to stop the vehicle. And the only issue has been whether there was reasonable suspicion or not. You don't doubt that there was reasonable suspicion to believe that there was an alien, an unlawful alien in the vehicle, do you? I don't doubt that, Your Honor. I think the distinction that we can make here between this set of facts and the cases that Your Honor is referring to is that immigration authorities already knew who this individual was. They'd already obtained a warrant based on a reason to believe standard that the person was eligible for removal from the United States. So there wasn't any independent reasonable suspicion outside of that for them to be conducting any sort of investigation. Their sole mission that morning was to affect this arrest warrant, not investigate other violations of the law. Okay. So now you're getting past a little bit, a little bit past the stop, right? Correct. Am I okay? So let's, to not get stuck on one thing the whole morning, let's assume they could pull the truck over, something with which I know you disagree. All right. Under any circumstances, is it okay to talk to your client and find out some things about him? I think under some circumstances, that would be okay, but it's not under the circumstances that we have in this case because there was no traffic violation and the ICE agent was not investigating any sort of traffic violation, nor were they, was that even within the scope of their authority to begin with? So if we assume that the stop was lawful, that just the stop and taking the passenger out of the truck was lawful, was it also lawful to ask your client to exit the vehicle and stand over by the side while they're dealing with this passenger? No, that was an unlawful detention because there was no reason for immigration officers to be questioning him or seizing him at all, even assuming that the initial stop was lawful. They had no reasonable suspicion or probable cause of any sort of criminal activity. And this wasn't, again, this was not a traffic stop and we contest the district court's characterization. So your answer would be different though, if this was not a deportation officer executing an administrative warrant. If it was a police officer executing a judicially issued warrant for the passenger and they pulled him over, then they, you would agree, they would be able to ask your client to step out of the car and stand over here while we're dealing with this fellow. I do agree with that. And because that is what all the cases that the district court relied on said, but in that specific set of circumstances that's permissible. I mean, and generally, would you also agree that those cases have a heavy reliance, like on officer safety, that you want to make sure that the driver who you're not executing a is out of your way and not interfering with your arrest? Right. And I think the difference is there. We're talking about warrants for felony crimes, which is very different than this administrative warrant, which is just reason to believe somebody might be eligible for removal from the United States. Agreed, but there's no finding by an officer issuing a warrant for Judge Hartz that Judge Ebell, as the driver of the vehicle, would be dangerous or a felon himself, right? No, but I think the difference is we're talking about police officers who are also tasked with ensuring that the roadways are safe and that sort of thing. And so when they encounter a vehicle who they have probable cause to believe contains someone who might be guilty of a felony crime, it's just a totally different set of circumstances. And also those police officers have different authority and that they can question drivers about their driving credentials and ensure that there's nothing else going on that would give cause for concern for public safety or their own safety while they're executing this warrant. Okay. I want to just make sure I understand this public space thing. Did the administrative warrant say stopping in a public space? Was it limited to only authority in public spaces or is that simply what you're saying is the general law about administrative warrants? What I'm saying is that the general training and law. The training. Correct. But it's not the warrant itself wasn't limited to stopping this guy catching him only in a public space. That wasn't on the face of that executive or the administrative warrant. That was not written on the form. Okay, as far as you know, there's no case law that says those warrants can only be done in public spaces. I know the law says they cannot be done in houses. But is there a case law that says those can only be affected in open spaces or not in cars? I am not aware of a case that says that specifically and I believe the reason that there probably aren't case laws that the the the code of federal regulations and training that ICE officers receive is that they have limited authority when executing these warrants. I understand all that. Okay. Thank you. And if with permission of the panel, I would like to reserve my remaining minute and a half for rebuttal. Thank you. Thank you. May it please the court. Paul Mishlevietz. I represent the United States in this matter. On the morning that Jorge Casanova ended up arresting Mr. Mario Gonzalez. He did not begin his day with any suspicion towards Mr. Mario Gonzalez or even knowing who he is. He simply went to execute a warrant for Mr. Torres-Mena. He knew that that warrant did not allow him to access Mr. Torres-Mena's home. So for instance, if he tried to do a knock and talk, if he knocked on the door, Mr. Torres-Mena came to the door. He says, I have this warrant to arrest you. Mr. Torres-Mena runs away inside. Not only can he not pursue, but that could be dangerous. Mr. Torres-Mena might be going to get a gun. Similarly, if he waited for some other time, other than a relatively controlled environment like a traffic stop to execute the warrant, there could be some warehouse problem where he doesn't have access to a warehouse. There could be other complications. And so instead what Jorge Casanova did was he waited, not while Mr. Torres-Mena was in his driveway and could easily run back into the house upon seeing officers approaching, but he didn't know, picked up Mr. Torres-Mena and took him on his way, presumably to work. After the truck got a few blocks, he stopped the truck. Some officers went to deal with Mr. Torres-Mena and while that was going on, in a way that did not extend the traffic stop at all, Jorge Casanova walked up to the driver to inform him of the reason for the stop. So you're saying it didn't extend the warrant. I don't have a lot of concerns about this case, but I do have one. I don't think the district court ever stated when Torres-Mena was apprehended. And so when you say that wasn't extended by the questioning of Mario Gonzalez, it's hard to know that if we don't know when Torres-Mena was stopped. How do we cope with that other than remanding for the district court to enter a factual timeline on it? There is no requirement in the law for the district court to state the minute at which a traffic stop began or a minute at which a traffic stop ended. The question for the district court that Judge Herrera did answer here is did the interaction between Jorge Casanova and Mr. Mario Gonzalez extend the traffic stop? So you're saying that just that conclusionary statement is sufficient. I wouldn't describe it as conclusory. I would describe it as a finding of fact. Well, it was a finding of fact, but it didn't document it with any times or it didn't say when the administrative stop was finished or satisfied or any of that data points, no data points. Judge Herrera did not specify nor did Jorge Casanova testify in terms of absolute time. You know, he never said Mr. Torres-Mena was in the car handcuffed and the Torres-Mena interactions were done at 8 57 a.m. There was no absolute time. The testimony was given by Jorge Casanova in terms of relative time when things happened relative to each other and based on Jorge Casanova's testimony about relative time, Judge Herrera found as a fact that the interactions with Mr. Mario Gonzalez did not go beyond the arrest of Mr. Torres-Mena in time. How does the Court of Appeals test that statement of finding fact? We've got to give great deference on findings of fact. We can reverse only if they're clearly erroneous, but how could we possibly decide whether that was clearly erroneous or not when we don't have a timeline? What you do have. We don't have, we don't have a video of it. We don't, we can measure, but we don't have the judge's statement about this is what happened and then something else and here's the timeline. We don't, all we can do is say, well, he's a good judge. I guess we got to accept it, period. You have more than that, Your Honor. You have Jorge Casanova's testimony about relative time, not absolute time, not what the clock said at any given moment in the interaction because he wasn't looking at his watch during those moments in the interaction, but you have relative time. You have Judge Herrera's explicit finding credibility of Jorge Casanova who testified about that relative time and you can see that Judge Herrera relied on that credible testimony about relative time to find as a fact that no part of the interaction with Mr. Mario Gonzalez up until the statement, no, I don't have authority to be in the United States extended beyond the time of the interactions with Mr. Torres Mea. Additionally, don't we have to know what was going on with the arrestee at the time? Mr. Mario Gonzalez said, I'm not here lawfully, essentially. If he had already been handcuffed and put in a government vehicle or something, then the stop is over. Don't we need something to indicate what was going on at that moment? You do not need more than the testimony that Jorge Casanova gave about what was going on with other officers and Mr. Torres Mea. What did he say in that regard? His testimony was... Do you have an idea of what was... They were doing various things to process the person proven naïve to warrant. Yes. And the question is, was that process over by the time we got the confession by the defendant? The answer is no. How do we know that? Because Jorge Casanova testified about the time that the traffic stop took, the Torres Mea interaction portion of the traffic stop took, that other agents were doing. And he said it was about five to ten minutes. And he testified about the time it took for him to ask the very brief dialogue. And we have, of course, the finding by Judge Herrera that it was a very brief dialogue. You know, may I see... First, you know, can you step over here so I don't have to stand in traffic, just as a safety matter. And then once they got out of traffic, you have the question, may I see your documents, presents the Mexican consular ID, which is immediately interesting to Jorge Casanova because Americans don't carry that document. He says, where are you from? I'm from Mexico. Do you have authority to be in the United States? No. And that's a very brief series of questioning compared to the five to ten minutes it took to complete the authorized interaction with Mr. Torres Mea. And so we don't need to just trust that Judge Herrera was correct in that factual finding. We can see what she relied on to make that factual finding. And it's not clearly erroneous. And the defendant, Mr. Murillo-Gonzalez. What you're saying is that we have a finding from her that the two were pretty much simultaneous because they were different sets of officers and that it took 10 minutes to handle the executive warrant and administrative warrant. And within that time, 10 minutes then, when the judge said there was no extension of time, that's the equivalent of saying this was simultaneous and was concluded before the arrest of the alien. Yes, of Mr. Torres Mea. And I will point out that Mr. Murillo-Gonzalez did not challenge as clearly erroneous that factual finding that the traffic stop was not extended by the interactions with Mr. Murillo-Gonzalez. That factual finding that would require clear error for this or, you know, manifest injustice. Did that challenge her below? Did not challenge it here. Did not describe it here as clearly erroneous. The furthest that Mr. Murillo-Gonzalez went in his briefs was to say that the time things took to unfold was difficult to determine. It was not challenged as clearly erroneous against the manifest weight of the evidence or otherwise representing some kind of manifest factual injustice. Part of Mr. Murillo-Gonzalez's argument here is they argue that traffic stop was extended because the questions never should have been asked. And that was a kind of a new argument, but factually the discreet question of did the interactions with Mr. Murillo-Gonzalez extend beyond the time required for other agents to process Mr. Torres Mea? That was not challenged as clearly erroneous. That is a factual finding that in the United States. Yes, sir. Counsel was pointing to administrative regulations and all with regard to when agents can affect arrests. How do you respond to that? According to her account that pretty much says that what was done here is not in accordance with the guidelines. I'm not sure that that affects whether it was unconstitutional or whether the evidence should be suppressed, but it does color the analysis. My first argument is that it's waived, wasn't brought up below. Judge Herrera had no opportunity to address that argument. My second argument. There's no reference at that hearing to these regulations. We can look at the transcript, which is the third volume of hope you're familiar with, but I don't remember. I don't remember. I mean, it was on was on zoom. It was during the pandemic. There was no challenge that I understood or interpreted to be a challenge to Jorge Casanova's Authority as a deportation officer rather than as a special agent or a TFO or anything like that. I don't remember anything like that at the District Court. And then and then a second my second argument would be. There's no reason to believe that there's a private right of action in any such regulation restricting what DO Jorge Casanova is supposed to do that gives a criminal defendant a remedy about it. And my third argument would be this is a Fourth Amendment challenge. This is a seizure challenge. And when we assess the Fourth Amendment, we assess restrictions on people's Liberty and is any given restriction on people's Liberty justified. We have a constitutional standard for traffic stops. We have a constitutional standard for full arrests that sometimes follow traffic stops. And one of the challenges that has been preserved in this case is the question of whether Mr. Mario Gonzalez was fully arrested of being on being traffic stop. Judge Herrera got to address that. But when we examine constitutionally any given seizure, we do not ask whether there's some there's some policy that a police office puts out that says these kind of agents should do traffic stops. Yes, sir. Normally once there's a stop. We don't restrain officers from asking questions that don't belong to stop. But here's there was there was because it being asked questions is not a Fourth Amendment intrusion. Yes, it's the prolongation of the stop. That's the intrusion. But here we have a separate intrusion asking filling the driver to get out of the vehicle. And you say well that if I'm going to talk to him for safety. I want him on the sidewalk, but if that's necessary, but there's still an intrusion by making get out of the vehicle. In the typical traffic stop that would be fine because you stopped somebody because of a traffic violation and you have a right to find out whether the person is a licensed driver and that sort of stuff. I'm not sure that applies here. So where was the right to? Require him to step out of the car to be asked questions in this case. What was the officer doing that he had a right to do that allowed him to make him move? My answer is in two parts. The first part is that Mueller against Mena Supreme Court 2005 tells nothing to do with the traffic stop. It's not that's not a traffic stop case. It tells us that agents are allowed to talk to people who are lawfully detained about immigration. I gave you that. Yes, but that was only the first part of my answer. My second part of my answer is given that we know Jorge Casanova can talk to Mr. Mario Gonzalez about that. He is allowed to ask Mr. Mario Gonzalez to step to the sidewalk. So Jorge Casanova doesn't have to stand in traffic while he's doing the talk. It's not that you the reason he is the right to ask questions is because asking questions is not a Fourth Amendment intrusion. Also true. And the only way that talking to the driver would be a Fourth Amendment intrusion is if it prolongs the stop here. We have a week here. We have a separate Fourth Amendment intrusion making someone leave the car. Stand on the sidewalk. So what's the justification for that? And I'm not sure that was raised or argued on appeal. It was not but I'm curious. So I would argue that it's not an additional intrusion. It is part and parcel of the traffic stop and the safety leeway that the Judiciary Branch gives officers executing traffic stops. And this was a traffic stop in the view of the United States, whether it was a stop. It wasn't a traffic stop. Here's why I describe it as a traffic stop. It wasn't a violation of the traffic law. It was not. Here's how I describe it as a traffic stop. If a special agent is doing surveillance of a drug deal, okay, and they see a drug deal and they see a suspect drive away, they can call up a TFO and they could say, please wait till this guy runs a red light and then pull him over. But they could also say, TFO, pull over that car right now. And we will later have to justify the reasonableness of that stop to the Judiciary Branch. But that's a good command and that command can be followed. When you have a car traveling on the road and you light them up and I see my time's expired. May I finish? And a police officer lights them up and they yield to that show of authority and stop their vehicle on the side of the road and the officer walks up temporarily standing in traffic to say, hey, can you please do this on the sidewalk so I don't have to stand in traffic? The United States takes the position that that is not an additional intrusion or seizure. But if it is, if it is an additional intrusion or seizure, the position of the United States is that Mueller against the police officer to ask those immigration questions and to have that into interaction on a person who is lawfully detained. And Mr. Murillo-Gonzalez was lawfully detained until the completion of the Torres Mena arrest, which did, which we know from Judge Herrera's factual findings didn't take any longer. Thank you. Other questions? Subject to your questions. Thank you. Your time is expired. Yes, Your Honor. I just want to briefly address the government's argument that this, that these arguments were waived. At multiple occasions at the district court, we pointed out that there was a difference between an administrative warrant and a warrant based on probable cause. In fact, the government even questioned its witness, Jorge Casanova, on the stand about what his authority was, and   I just want to briefly address the government's argument that this, that these arguments were waived. And I just want to leave the court with this, and that is that if the court permits what happened here to stand, what that essentially gives ICE authority or any immigration official authority to do is stop anyone. Let's say that there was an Uber driver coming to pick Mr. Torres Mena up and drive him to work. Allowing Officer Casanova to do what he did to Mr. Murillo-Gonzalez would mean that he could pull the Uber driver out of the car and demand his documents without anything more other than the fact, other than knowing that he's there giving Mr. Torres Mena a ride to work. And that's simply impermissible. What Officer Casanova did in this case was violate the Fourth Amendment and the court should rule in our favor. Explain the theory of why that's impermissible. What Fourth Amendment interest is that violating? Well, it would be the violation of whoever is driving this car, their right to remain free from official interference. They're being stopped when they haven't done anything wrong. They're being pulled out of their vehicle and they haven't done anything wrong and there's no suspicion to believe they've done anything wrong. And we have an immigration officer not asking for driving credentials, but demanding to see documents. Which means that you're talking about hypotheticals that are scary. That means that you can never stop a vehicle in which someone for whom you'll probably cause to arrest is a passenger. You just can't do that. Is that right? May I answer the court's question? No, that is not what we're saying. In this specific instance where there's an administrative warrant to detain someone who an immigration officer has reason to believe may be eligible for removal from the United States means that they can arbitrarily interfere with people on the roadways driving around and at demand that they give them documents when there's no articulable suspicion that they're doing anything wrong. And even if the court finds that this stop was lawful that the Jorge Casanova was allowed to stop the vehicle. The only thing he would have been permitted to do at that point was potentially explain the reason for the stop to the driver and then let him be on his way. Thank you. Counselor. Case submitted. Counselor excused. We're going to take a brief recess.